UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ANTHONY LITVIN,                         :

                    Plaintiff,          :

     -against-                          :     09 Civ. 8649 (JSR)(HBP)

MICHAEL J. ASTRUE,                      :     REPORT AND
Commissioner of Social Security               RECOMMENDATION
                                        :

                    Defendant.          :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE JED S. RAKOFF, United States

District Judge,


I.   Introduction


          Plaintiff, Anthony Litvin, brings this action pursuant

to section 205(g) of the Social Security Act ("Act"), 42 U.S.C.

§ 405(g), seeking judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his

application for waiver of overpayment of disability insurance

benefits ("DIB") under Title II of the Act.

          The Commissioner has moved for judgment on the plead-

ings pursuant to Rule 12(c) of the Federal Rules of Civil Proce-

dure (Docket Item 11).  For the reasons set forth below, I

respectfully recommend that the Commissioner's motion be denied and the case be remanded for further proceedings consistent with this opinion.

II.  Background

Plaintiff filed an application for DIB on July 31, 1991, and was approved on the basis of a mental impairment (Tr.[1] 14, 18-19).  His DIB became effective in February 1991 (Tr. 14). Plaintiff returned to work in August 1992, and continued to work through February 1993 (Tr. 14, 25).  During this time period, plaintiff filed a report with the Social Security Administration ("SSA") dated September 21, 1992, addressing the continuing nature of his disability and his work activity (Tr. 121-28, 157-59).  In this report, he stated that he felt able to return to work and did not list any limitations on performing such work (Tr. 121, 126-27).  Additionally, plaintiff did not list any limitations with respect to performing his daily activities (Tr. 124-25).

On January 4, 1994, the SSA notified plaintiff that it reviewed his DIB and determined that his disability was continu-

---

[1]"Tr." refers to the administrative record that the Commissioner filed as part of its answer, as required by 42 U.S.C. § 405(g).

ing (Tr. 21).  On February 23, 1994, the SSA also notified plaintiff that, as of that point in time, he had used six months of his trial work period[2] (Tr. 23).

On May 26, 1995, plaintiff filed another work activity report with the SSA, stating that he returned to work in approximately mid-March 1995, and as of the date of the report, was still working (Tr. 166-68).  Based upon this information, by notices dated August 7, 1995 (Tr. 25-26) and August 22, 1995 (Tr. 27-28), the SSA notified plaintiff that he no longer qualified for DIB as of August 1995.  Specifically, the SSA explained that plaintiff completed his "9-month trial work period" in April 1995 -- a trial work period that consisted of the months August 1992 through February 1993, March 1995, and April 1995 -- and, thereafter, continued to perform substantial gainful activity (Tr. 25, 27).  However, plaintiff's DIB were reinstated[3] as of August 1995

---

[2]Under the Social Security Act ("Act"), a "trial work period" is defined as "a period during which a [DIB claimant] may test [his] ability to work and still be considered disabled . . . .  During this period[,] [the DIB claimant] may perform [services] in as many as 9 months, but these months do not have to be consecutive . . . .  However, after the trial work period has ended[,] [the SSA] will consider the work . . . in determining whether [the DIB claimant's] disability ended at any time after the trial work period."  20 C.F.R. § 404.1592(a).

[3]A "re-entitlement period," which lasts for a period of up to 36 months, begins after the completion of a trial work period and gives a DIB claimant an additional period of time in which to test his ability to work.  20 C.F.R. § 404.1592a(a),(b).  Thus, (continued...)

(Tr. 25, 27) because plaintiff informed the SSA that he stopped working in June 1995 (Tr. 170-71).

On November 27, 1995, plaintiff filed another report with the SSA to address the continuing nature of his disability and his work activity to date (Tr. 131-38).  In this report, plaintiff stated that he did not feel able to return to work because he was having difficulty concentrating, was forgetful, was not sleeping at night, and was experiencing headaches (Tr. 131, 136).  With respect to performing his daily activities, however, he listed no limitations and stated that he did not need assistance (Tr. 134-35).

On December 14, 1995, the SSA notified plaintiff that his DIB would be reviewed once again and requested updated medical and employment information (Tr. 32-33).  Plaintiff did

---

[3](...continued)
the first time that a DIB claimant works after his trial work period has been completed and that work constitutes "substantial gainful activity" as defined by 20 C.F.R. §§ 404.1571 - 404.1576, the SSA will find that the DIB claimant's disability has ceased. 20 C.F.R. § 404.1592a(a)(1).  If this occurs, the DIB claimant will "be paid benefits for the first month after the trial work period in which [he performs] substantial gainful activity . . . and the two succeeding months, whether or not [he performs] substantial gainful activity." 20 C.F.R. § 404.1592a(a)(2)(i). However, if the DIB claimant's benefits are stopped during the re-entitlement period, "they may be started again without a new application and a new determination of disability if the [DIB claimant] stop[s] doing substantial gainful activity during the re[-]entitlement period."  20 C.F.R. § 404.1592a(a)(2)(i).

4

not respond to this request, and the SSA sent him a notice dated December 29, 1995 that stated his benefits may be stopped if he did not contact the SSA within ten working days (Tr. 34). Notwithstanding this, on April 24, 1996, the SSA determined that plaintiff was still disabled (Tr. 35).

The SSA initiated the next review of plaintiff's DIB on March 6, 1999, once again requesting updated medical and employment information (Tr. 38-40). After the review was completed, by notice dated August 20, 1999, the SSA informed plaintiff that he was no longer eligible for DIB as of October 1999 because his health improved and he was now able to work (Tr. 43-45). Plaintiff submitted a request for reconsideration of the SSA's decision (Tr. 46-49, 149-54), and the SSA reversed its decision on November 5, 1999 (Tr. 50-53).

On October 2, 2001, plaintiff contacted the SSA to report that he had returned to work on September 20, 2001 (Tr. 8, 102, 105). At this time, plaintiff received incorrect information from an SSA representative that he was in a trial work period that would run from October 2001 through June 2002 (Tr. 8, 102, 105).

On November 5, 2002, plaintiff filed a report addressing the continuing nature of his disability and his work activity to date (Tr. 118-19). In this report, plaintiff stated that his

health was "better" than it had been in October 2000 and that he was still working (Tr. 118).

On September 16, 2003, the SSA sent plaintiff a notice requesting that he contact the agency to discuss his DIB (Tr. 54), and on September 22, 2003, the SSA sent plaintiff forms to complete regarding his medical condition and work activity (Tr. 56-57). Plaintiff was again contacted by the SSA -- on October 7, 2003 (Tr. 58), November 15, 2003 (Tr. 59), and January 26, 2004 (Tr. 62) -- about submitting the requested information.

On February 18, 2004, the SSA notified plaintiff that a decision to terminate his DIB as of October 2002 was forthcoming. (Tr. 66). Specifically, the SSA explained that the decision was based upon his performing "substantial work" after the completion of his trial work period, which the SSA identified as October 2001 though June 2002 (Tr. 66-68). The SSA then attempted to contact plaintiff a number of times -- specifically, April 7, 2004 (Tr. 70), April 22, 2004 (Tr. 71-72), April 30, 2004 (Tr. 73), May 4, 2004 (Tr. 74), and May 5, 2004 (Tr. 75-76) -- about submitting further documentation with respect to his DIB review, but no response was received. Thus, on May 18, 2004, the SSA

notified plaintiff that it had determined he was no longer
disabled as of October 10, 2003 (Tr. 79-81).[4]

Plaintiff, however, states that he contacted the SSA by
calling its "800" number on a monthly basis -- from November
2002[5] through February 2004 -- about the status of his DIB, and
that each time, he was told by an SSA representative that he was
in a trial work period (Tr. 105, 213). Additionally, plaintiff
states that he was informed by an SSA representative on April 7,
2004 that "I was . . . 'still in a trial work period, and if I
can't work in the future, I will be reinstated with no waiting
period'" (Tr. 104, 110, 200, 213).

--------

[4]While this notice states that the SSA had determined
plaintiff was no longer disabled as of October 10, 2003 (see Tr.
79, 81), other evidence in the record indicates that the SSA
determined plaintiff was no longer disabled as of the year 2002
(see Tr. 66-67 (SSA notice dated February 18, 2004, informing
plaintiff that it intended to find he was not entitled to DIB as
of October 2002); 82 (SSA notice dated August 3, 2004, informing
plaintiff of the overpayment and that his benefits should have
been terminated as of March 2002); 83-84 (SSA's denial of
plaintiff's request for reconsideration, affirming that plaintiff
was not entitled to DIB as of March 2002); 8, 15 (decisions of
the ALJ and the Appeals Council, which refer to the SSA's
decision that plaintiff was not entitled to DIB as of March
2002)).

[5]While the record shows that plaintiff told the ALJ and the
Appeals Council that he began contacting the SSA on a monthly
basis in November 2002 (see Tr. 105, 213), he currently contends
that the monthly telephone calls began in June 2002 (see
Plaintiff's Memorandum of Law in Opposition to Defendant's Motion
for Judgment on the Pleadings ("Pl.'s Mem."), at 3).

On August 3, 2004, the SSA notified plaintiff that his DIB should have actually been terminated as of March 2002, and as a result, he had been overpaid DIB in the amount of $28,904.60[6] (Tr. 82).  Plaintiff requested reconsideration of the SSA's decision, and after reconsideration, the SSA informed plaintiff by notice dated March 17, 2005 that it was adhering to its decision (Tr. 83-84).  In this notice, the SSA explained that because plaintiff's trial work period actually ended in April 1995 -- not June 2002 -- and he continued to perform "substantial gainful work" as of December 2001, his DIB should have been terminated as of March 2002 (Tr. 83-84).  Plaintiff then filed a request for a waiver of overpayment on the grounds that he was without fault and unable to repay the amount due (Tr. 102-05, 141-48).

On June 7, 2005, the SSA notified plaintiff that his waiver request was going to be denied based on the information in

---

[6]The notice indicates that this figure is based upon the following amounts: (1) monthly benefits for March 2002 through November 2002 in the amount of $11,178.00 ($1,242.00 per month); (2) monthly benefits for December 2002 in the amount of $1,259.00 ($1,259.00 per month); (3) monthly benefits for January 2003 through November 2003 in the amount of $13,882.00 ($1,262.00 per month); and (4) monthly benefits for December 2003 through January 2004 in the amount of $2,576.00 ($1,288.00 per month) (see Tr. 82).  However, these figures, when added together, equal $28,895.00 -- not $28,904.60.  The record does not explain this discrepancy.

his file, but that he was entitled to a personal conference prior to the issuance of that decision (Tr. 87-88).  Plaintiff's personal conference was scheduled for July 5, 2005 (Tr. 87).

On July 5, 2005, the SSA denied plaintiff's request for waiver of overpayment (Tr. 101).  Specifically, the SSA stated:

> IN JUNE 31, 1991, YOU FILED FOR DISABILITY BENEFITS AND YOUR RIGHTS AND RESPONSIBILITIES WERE EXPLAINED TO YOU. YOU WERE ADVISED THAT IF YOU WORKED OVER THE SUBSTAN-TIAL GAINFUL ACTIVITY AMOUNT IT WOULD AFFECT YOUR DISABILITY BENEFITS.  SINCE YOU CONTINUED TO WORK AND CONTINUED TO RECEIVE YOUR FULL DISABILITY BENEFITS YOU WERE OVERPAID.

(Tr. 101).  On July 22, 2005, plaintiff requested review of the SSA's decision by an administrative law judge (Tr. 91-92, 106-10).  He later waived his right to a formal hearing and, instead, sought a determination of his appeal based solely on the record (Tr. 197).

Administrative Law Judge ("ALJ") James B. Reap issued a decision with respect to plaintiff's appeal on December 28, 2006 (Tr. 11-17), finding that plaintiff received an overpayment, was at fault in causing and accepting the entire overpayment, and the overpayment could not be waived (Tr. 17).  On February 9, 2007, plaintiff requested review of the ALJ's decision by the Appeals Council of the SSA Office of Hearings and Appeals ("Appeals Council") (Tr. 199-200, 207).  The Appeals Council granted review

on June 19, 2009 (Tr. 208-10), and issued a ruling that was partially favorable to plaintiff on July 31, 2009 (Tr. 4-10).

Specifically, the Appeals Council found that plaintiff was without fault in causing the overpayment for the months October 2001 through September 2002 because he relied on misinformation from an official source, but that he was at fault for causing the overpayment for the months October 2002 through January 2004 (Tr. 9). Thus, the SSA presently seeks an adjusted overpayment amount of $20,210.60.[7]

Plaintiff commenced the present action on September 22, 2009, requesting that the court find him "not at fault in causing the overpayment retroactive to the date of the initial disability, or in the alternative, remand [the case] to the Commissioner of Social Security for reconsideration of the evidence" (Complaint ("Compl."), dated September 22, 2009 (Docket Item 2), at 3). The Commissioner filed an answer on July 30, 2010 (Docket Item 9) and a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on January 4, 2011 (Notice of Motion for Judgment on the Pleadings, dated January 4, 2011 (Docket Item 11)). Plaintiff opposes the motion.

---

[7]This is calculated by subtracting the monthly benefits received for the months March 2002 through September 2002 ($8,694.00) from the original overpayment amount ($28,904.60).

10

III. <u>Analysis</u>

    A.   Applicable Legal
        <u>Principles</u>

      1.  <u>Standard of Review</u>

     The Court may set aside the final decision of the

Commissioner[8] only if it is not supported by substantial evidence

or if it is based upon an erroneous legal standard.  42 U.S.C.

§ 405(g); <u>Burgess v. Astrue</u>, 537 F.3d 117, 127-28 (2d Cir. 2008);

<u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000); <u>Tejada v.

Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999); <u>Bubnis v. Apfel</u>, 150

F.3d 177, 181 (2d Cir. 1998).

     The Court first reviews the Commissioner's decision for

compliance with the correct legal standards; only then does it

determine whether the Commissioner's conclusions were supported

by substantial evidence.  <u>Tejada v. Apfel</u>, <u>supra</u>, 167 F.3d at

773-74; <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987);

<u>Ellington v. Astrue</u>, 641 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2009)

(Marrero, D.J.).  "Even if the Commissioner's decision is sup-

ported by substantial evidence, legal error alone can be enough

to overturn the ALJ's decision."  <u>Ellington v. Astrue</u>, <u>supra</u>, 641

---

    [8]The Appeals Council's decision constitutes a final decision
of the Commissioner.  <u>Sims v. Apfel</u>, 530 U.S. 103, 106-07 (2000).

F. Supp. 2d at 328; accord Johnson v. Bowen, supra, 817 F.2d at
986.  However, "where application of the correct legal principles
to the record could lead to only one conclusion, there is no need
to require agency reconsideration."  Johnson v. Bowen, supra, 817
F.2d at 986.

          "The Supreme Court has defined substantial evidence as
'more than a mere scintilla' and as 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclu-
sion.'"  Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997),
quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Conse-
quently, where [there is] substantial evidence . . . this Court
may not substitute its own judgment as to the facts, even if a
different result could have been justifiably reached upon de novo
review."  Beres v. Chater, 93 Civ. 5279 (JG), 1996 WL 1088924 at
*5 (E.D.N.Y. May 22, 1996); see also Valente v. Sec'y of Health &
Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  Thus, "'[t]o
determine on appeal whether an ALJ's findings are supported by
substantial evidence, a reviewing court considers the whole
record, examining the evidence from both sides, because an
analysis of the substantiality of the evidence must also include
that which detracts from its weight.'"  Terwilliger v. Comm'r of
Soc. Sec., No. 3:06-CV-0149 (FJS/GHL), 2009 WL 2611267 at *2

(N.D.N.Y. Aug. 24, 2009), <u>citing</u> <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).

2.   <u>Waiver of Overpayment</u>

Whenever the Commissioner "finds that more or less than the correct amount of payment has been made to any person . . . proper adjustment or recovery shall be made . . . ."  42 U.S.C. § 404(a)(1).[9]  However, "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of [Title II] or would be against equity and good con-science."  42 U.S.C. § 404(b); <u>see</u> 20 C.F.R. § 404.506(a).

An individual who has received excess disability benefits can request a waiver of overpayment pursuant to the foregoing standards.  <u>See</u> 20 C.F.R. § 404.506(b)-(c); SSA's Program Operations Manual System ("POMS") GN §§ 02250.001 - 02250.002.  The individual requesting such a waiver bears the burden of establishing that he is entitled to it.  <u>See</u> 20 C.F.R. § 404.506(c); <u>Hannon v. Barnhart</u>, 134 F. App'x 485, 487 (2d Cir.

---

[9]An entitlement overpayment, the type of overpayment at issue here, is defined as "[a] benefit payment under title II . . . [to] an individual who fails to meet one or more requirements for entitlement to such benefit or a benefit payment exceeding the amount to which he is entitled . . . ."  20 C.F.R. § 404.510a.

2005); Valente v. Sec'y of Health & Human Servs., supra, 733 F.2d at 1042; Center v. Schweiker, 704 F.2d 678, 680 (2d Cir. 1983); Cruz v. Astrue, 08 Civ. 5588 (PKC), 2009 WL 1835632 at *3 (S.D.N.Y. June 24, 2009) (Castel, D.J.); Beebe v. Astrue, 07 Civ. 3960 (JFB), 2008 WL 5243890 at *4 (E.D.N.Y. Dec. 15, 2008); Feuer v. Astrue, 06 Civ. 13478 (SAS), 2008 WL 4755554 at *3 (S.D.N.Y. Oct. 28, 2008) (Scheindlin, D.J.).

The SSA's regulations define fault for these purposes as follows:

> What constitutes fault . . . on the part of the over-paid individual . . . from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual . . . resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507(a)-(c); see also POMS GN § 02250.005. "No showing of bad faith is required; rather, an honest mistake may be sufficient to constitute fault." Center v. Schweiker, supra, 704 F.2d at 680; see also Hill v. Comm'r of Soc. Sec., 417 F. App'x 103, 104 (2d Cir. 2011); Barone v. Bowen, 869 F.2d 49, 51 (2d Cir. 1989); Cruz v. Astrue, supra, 2009 WL 1835632 at *3;

14

Feuer v. Astrue, supra, 2008 WL 4755554 at *3; Borodkin v.
Barnhart, 06 Civ. 2583 (RWS), 2007 WL 1288602 at *3 (S.D.N.Y. May
2, 2007) (Sweet, D.J.).  A recipient's fault will preclude waiver
of overpayment even if the SSA is also at fault.  See 20 C.F.R.
§ 404.507 ("Although the Administration may have been at fault in
making the overpayment, that fact does not relieve the overpaid
individual . . . from liability for repayment if that individual
is not without fault."); see also POMS GN § 02250.005.

        In determining whether an individual is without fault,
the Commissioner "shall specifically take into account any
physical, mental, educational, or linguistic limitation such
individual may have . . . . "  42 U.S.C. § 404(b); see also 20
C.F.R. § 404.507 ("[T]he [SSA] will consider all pertinent
circumstances, including the individual's age and intelligence,
and any physical, mental, educational, or linguistic limitations
. . . . ").

        Additionally, an individual is deemed to be without
fault if he "accepts such overpayment because of reliance on
erroneous information from an official source within the [SSA]
. . . with respect to the interpretation of a pertinent provision
of the [SSA] or regulations pertaining thereto . . . . "  20
C.F.R. § 404.510a; see also POMS GN § 02250.061.  Requiring
repayment in such a situation is also deemed to be "against

15

equity and good conscience."   20 C.F.R. § 404.512(a); see also
POMS GN § 02250.061.

Even if an individual is found to be without fault,
waiver of overpayment can be granted only if recovery of the
overpayment would either defeat the purpose of Title II or would
be against equity and good conscience.   42 U.S.C. § 404(b); see
20 C.F.R. § 404.506(a).   Such recovery defeats the purpose of
Title II if it "defeat[s] the purpose of benefits under this
title, i.e., [if it] deprive[s] a person of income required for
ordinary and necessary living expenses."   20 C.F.R. § 404.508(a);
see also POMS GN § 02250.100.   Such recovery is against equity
and good conscience if an individual "[c]hanged his position for
the worse . . . or relinquished a valuable right . . . because of
reliance upon a notice that a payment would be made or because of
the overpayment itself . . . . "   20 C.F.R. § 404.509(a); see
also POMS GN § 02250.150.

Finally, the Second Circuit has applied a "two-step"
approach in waiver of overpayment cases, i.e., "if the Commis-
sioner's finding that the claimant was not without fault is
supported by substantial evidence, there is no need to consider
whether recovery of the [overpayment] would defeat the purpose of
Title II or would be against equity and good conscience, 'since
those factors come into play only if the recipient is without

16

fault.'" <u>Langella v. Bush</u>, 161 F. App'x 140, 141 (2d Cir. 2005),
<u>quoting</u> <u>Chlieb v. Heckler</u>, 777 F.2d 842, 846 (2d Cir. 1985); <u>see
also</u> <u>Cruz v. Astrue</u>, <u>supra</u>, 2009 WL 1835632 at *4; <u>Beebe v.
Astrue</u>, <u>supra</u>, 2008 WL 5243890 at *4; <u>Feuer v. Astrue</u>, <u>supra</u>,
2008 WL 4755554 at *4 n.50.


       B.    Application of the
            <u>Foregoing Principles</u>


       1.   <u>The Parties' Contentions</u>


      The Commissioner argues that his decision to deny
plaintiff waiver of overpayment for the months October 2002
through January 2004 is supported by substantial evidence (Memo-
randum of Law in Support of the Commissioner's Motion for Judge-
ment[<u>sic</u>] on the Pleadings ("Def.'s Mem."), at 2, 9).

      Specifically, the Commissioner relies on the following:
(1) plaintiff's 1991 application for DIB benefits, that acknowl-
edged "going back to work was an event that could affect his
eligibility;" (2) plaintiff was informed by an SSA notice as
early as February 1994 "about the nature and length of a trial
work period;" (3) plaintiff "was familiar with the details" of a
trial work period and its potential effect on his DIB because he
completed one trial work period in 1995; (4) plaintiff was "aware
of his obligation to report his earnings . . . which he did after

returning to work in the fall of 2001;" (5) even if the SSA incorrectly informed plaintiff that he was entitled to a second trial work period beginning in October 2001, he "was already aware that a trial work period lasted 9 months" and, thus, "knew or could have been expected to know that he was not entitled to . . . [DIB] after September 2002;" and (6) plaintiff "repeatedly failed to respond to SSA attempts to confirm his current earn-ings, thereby extending the time that SSA would continue to pay . . . [DIB] to which he was not entitled." (Def.'s Mem. at 9-11).

Plaintiff opposes the Commissioner's motion claiming that he is without fault for the overpayment and is unable to repay the amount due.[10]  He contends that he followed SSA regula-tions by reporting his return to work in October 2001 and that the SSA "refuses to acknowledge I was given misinformation by them each time I actively sought information regarding the [trial work period] I was told I was in" (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl.'s Mem."), at 2).

---

[10]Because plaintiff is pro se, I shall "interpret plaintiff's pleadings 'to raise the strongest arguments that they suggest.'"  Ming v. Astrue, 07 Civ. 4567 (DLI)(SMG), 2009 WL 2495947 at *4 (E.D.N.Y. Aug. 13, 2009), quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

18

Specifically, plaintiff argues that: (1) he received no correspondence from the SSA concerning DIB eligibility issues until approximately a year after the October 2001 trial work period ended; (2) during June 2002[11] through January 2004, he called the SSA's "800" number on a monthly basis and "was assured" each time that he was in a trial work period; (3) he received a "Notice of Change in Benefits" from the SSA dated November 6, 2003, which stated that his DIB were being increased retroactively for the year 2003 -- as well as prospectively -- because the SSA had not taken into account his earnings from 2002 when calculating his prior DIB; and (4) on July 21, 2005, he contacted the SSA to request written confirmation of the dates it claimed constituted his trial work period, and he received a fax stating that he used 9 months of his trial work period as of "December 2006" and that his trial work period would expire in "June 2007" (Pl.'s Mem. at 2-4).

Plaintiff also generally states that the information provided by the SSA "does nothing but create total confusion to me and apparently . . . Social Security was equally confused by

---

[11]While plaintiff currently contends that the monthly telephone calls to the SSA began in June 2002 (see Pl.'s Mem. at 3), the record shows that plaintiff told the ALJ and the Appeals Council that he began contacting the SSA on a monthly basis in November 2002 (see Tr. 105, 213).

insisting that I was in a [trial work period] the entire time in question . . . . " (Pl.'s Mem. at 4). Finally, plaintiff contends that his "rights were violated" because the SSA scheduled his folder review and personal conference for the same day -- in violation of its regulations, which state, "The file review is always scheduled at least 5 days before the personal conference (Pl.'s Mem. at 2-3). <u>See</u> 20 C.F.R. § 404.506(c); <u>see</u> <u>also</u> POMS GN § 02270.005.

### 2.   The Commissioner's Determination that Plaintiff was "Not Without Fault"

The ALJ determined that plaintiff was at fault in causing and accepting the entire overpayment, rejecting plaintiff's arguments that (1) he was "misled [by the SSA] about the exact [<u>sic</u>] dates" of his trial work period, and (2) despite reporting his return to work, the SSA was "slow to stop [his] benefits in violation of their own rulings and procedures" (Tr. 16-17). Since the ALJ concluded that plaintiff was at fault in causing or accepting the overpayment, he found it unnecessary to analyze plaintiff's ability to repay the overpayment (Tr. 16).

The Appeals Council modified the ALJ's decision (Tr. 4, 7-9).[12]  Specifically, the Appeals Council found that plaintiff "was without fault in causing the overpayment . . . for the period October 2001 through September 2002, [but] was at fault in causing the overpayment . . . for the period subsequent to September 2002" (Tr. 9).

In reaching this determination, the Appeals Council noted that for the months October 2001 through September 2002, plaintiff relied on misinformation from an official source, i.e, the SSA (Tr. 8).  Plaintiff "actively sought the information [about his DIB] because he reported his work to the [SSA]" in October 2001 and he "relied on the original information that the [SSA] provided to him, namely that his trial work period was from October 2001 through June 2002 . . . . " (Tr. 8).  As a result, plaintiff was not at fault for the overpayment for those months, as well as the two succeeding months (Tr. 8).

However, with respect to the period subsequent to September 2002, the Appeals Council adopted the ALJ's findings and stated:

---

[12]The parties do not take issue with the Appeals Council's decision to waive a portion of the overpayment.  Thus, the only findings at issue are those of the Appeals Council concerning the months October 2002 through January 2004.

> Upon being erroneously advised that his trial work
> period was October 2001 through June 2002, [plaintiff]
> was placed on notice that, for each month he engaged in
> substantial gainful activity after September 2002, he
> would not be entitled to [DIB].  This notice also
> defined "substantial gainful activity."  Yet, the
> record reflects that the claimant worked at the level
> of substantial gainful activity after September 2002
> and continued to receive and cash disability benefit
> checks.  Such actions reflect that he knowingly ac-
> cepted benefits that he either knew, or should have
> known, he was not entitled to receive.

(Tr. 8-9).

Before considering whether the Commissioner's decision
is supported by substantial evidence, I first review it for
application of the correct legal standards.  See Tejada v. Apfel,
supra, 167 F.3d at 773; Johnson v. Bowen, supra, 817 F.2d at 985;
Ellington v. Astrue, supra, 641 F. Supp. 2d at 327-28.  I find
that the Appeals Council corrected the ALJ's error when it
applied 20 C.F.R. § 404.510a and POMS GN § 02250.061 -- which
deal with a DIB claimant's reliance on misinformation from an
official source -- to plaintiff's appeal and partially reversed
the ALJ's decision in accordance with those provisions (see Tr.
7-9).  However, the Appeals Council erred when it only applied 20
C.F.R. § 404.510a and POMS GN § 02250.061 to some of plaintiff's
contentions concerning misinformation and not to others.

Specifically, despite raising the contention before the
ALJ (see Tr. 104-05) and the Appeals Council (see Tr. 199-200,

22

213), neither addressed plaintiff's contention that he called the SSA's "800" number on a monthly basis from November 2002 through January 2004 to inquire about his benefits and, in substance, was repeatedly told that he was entitled to the benefits.

> To the ALJ, plaintiff stated:
>
> . . . I took it upon myself to contact [the SSA] via the "800" number prior to the 3rd of each month. [During these calls,] I would receive either of the following answers as to my status: "If you're receiving a check, you're entitled to it[,]" the other being that there was "no change in your payment status sir[.]"
>
> . . . . I was assured monthly from Nov. 2002 through Feb. 2004, by the [SSA's] "800" phone line employees that I was entitled to the checks.  I was told by Disability Analyst Ms. Segrue as late as April 7, 2004 that I was in fact "still in a [trial work period]."

(Tr. 104-05).  Additionally, to support his argument, plaintiff cited to POMS GN § 02250.061.

> Plaintiff also raised this contention to the Appeals Council, stating:
>
> [I]f after making timely inquiry[,] I'm told by an "Official Source" either in writing (on 2 occasions) or by phone (monthly to the 800 number) at least 16 times that I'm in a [trial work period], then that is what I'm obligated to abide by.  Since SSA is claiming I was overpaid, the information they gave me was misinformation.

(Tr. 200).  Plaintiff once again cited to POMS GN § 02250.061, as well as to the corresponding SSA regulation -- 20 C.F.R. § 404.510a.

23

After receiving the "Notice of Appeals Council Action" letter dated June 19, 2009 (Tr. 208-10), in which the Appeals Council informed plaintiff that it intended to issue a ruling that was partially favorable to him because he had relied on misinformation from the SSA for the months October 2001 through September 2002, plaintiff again asserted that he had received a similar series of assurances from the SSA during the months subsequent to September 2002 (Tr. 213). Specifically, he stated:

> I called the "800" number every month from Nov. 2002 forward, and was given the same answers every time I called being "there is no change in your payment status" and "if you're receiving a check, you're entitled to it[.]" . . . . Oddly, none of the evidence I submitted to the ALJ or to the council is ever addressed or even mentioned.

(Tr. 213).

The failure of the ALJ and the Appeals Council to fully address plaintiff's contentions is problematic because an ALJ is required to "issue a written decision that gives the findings of fact and the reasons for the decision." See 20 C.F.R. § 404.953; see also 42 U.S.C. § 405(b)(1). The ALJ "must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953. Thus, "[c]ases may arise . . . in which [the reviewing court] would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and

inference drawing is required of the ALJ.  In such instances, [courts do] not hesitate to remand the case for further findings or a clearer explanation for the decision." Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (internal citations omitted); see also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996); Patterson v. Astrue, No. 7:06-CV-0897 (LEK), 2010 WL 3909605 at *4-*5 (N.D.N.Y. Sept. 29, 2010); Reese v. Bowen, 86 Civ. 6798 (SWK), 1989 WL 49222 at *4 (S.D.N.Y. Apr. 28, 1989) (Kram, D.J.); Barone v. Heckler, 83 Civ. 2280 (JFK), 1984 WL 593 at *6 (S.D.N.Y. July 2, 1984) (Keenan, D.J.).

        Thus, where a plaintiff contends that an overpayment was the result of reliance on misinformation from an official source, the ALJ must address that contention and explain whether it is to be credited or rejected.  See Valente v. Sec'y of Health & Human Servs., supra, 733 F.2d at 1044-45 (remanding case in part because the ALJ failed to properly address plaintiff's allegations of reliance on misinformation from the SSA by either expressly crediting or rejecting such allegations in his decision); Ming v. Astrue, 07 Civ. 4567 (DLI)(SMG), 2009 WL 2495947 at *5-*6 (E.D.N.Y. Aug. 13, 2009) (same); Lieberman v. Shalala, 878 F. Supp. 678, 681-82 (S.D.N.Y. 1995) (Sprizzo, D.J.) (same); cf. Beebe v. Astrue, supra, 2008 WL 5243890 at *8 (stating that while the ALJ did not expressly refer to plaintiff's "credibil-

25

ity" in his analysis, it was clear that he properly addressed, and thereafter rejected, plaintiff's allegations of misinformation).

Here, as plaintiff correctly notes, his claimed monthly telephone calls to the SSA's "800" number are not mentioned at all by either the ALJ or the Appeals Council.  In fact, plaintiff's only assertion concerning misinformation that was expressly addressed by the ALJ and the Appeals Council is his claim that he called the SSA's "800" number in October 2001 to report his return to work and thereafter received misinformation from an SSA representative concerning his trial work period (see Tr. 7-9, 14-17).

The ALJ's only discussion of plaintiff's misinformation claim consists of the following:

> In support of waiver the claimant has submitted a number of arguments, one of which is that he was misled about the exact [sic] dates of his [trial work period] . . . . After considering all the evidence the undersigned finds the claimant was at fault.  It is true that there was a mixup when the claimant went back to work in 2001, and he was told he was starting a trial work period.  However, the claimant had already been informed in 1995 that his trial work period had expired . . . . Moreover, even if he legitimately believed his [trial work period] began in October 2001[,] this would have meant cessation as of October 2002.

(Tr. 16).  This discussion, however, is insufficient because generally referring to plaintiff's claim that he was "misled

about the exact [sic] dates of his [trial work period]" and then selectively discussing the record without any mention of the monthly telephone calls does not demonstrate that the ALJ properly considered, much less properly rejected, plaintiff's claim of reliance on misinformation from the SSA for the months in which the calls occurred (see Tr. 16). See Valente v. Sec'y of Health & Human Servs., supra, 733 F.2d at 1044 ("It is . . . conceivable that the ALJ sub silentio rejected the notion that § 404.510a was applicable because he did not believe Mrs. Valente's testimony that SSA employees told her to keep and cash the checks.  But . . . the ALJ made no finding as to Mrs. Valente's credibility."); Ming v. Astrue, supra, 2009 WL 2495947 at *5-*6 ("[T]he ALJ should have considered the implications of 20 C.F.R. § 404.510a, because plaintiff claimed that she was misinformed by the SSA during her numerous visits to its Brooklyn office . . . . The ALJ may have discredited plaintiff's claims of being misinformed . . . but did not state so . . . in his written decision."); Lieberman v. Shalala, supra, 878 F. Supp. at 682 ("Although the ALJ may have implicitly rejected Lieberman's testimony concerning the telephone calls, and therefore rejected the applicability of § 404.510a, he failed to make an explicit finding regarding her credibility for the record."); cf. Beebe v. Astrue, supra, 2008 WL 5243890 at *8 ("[A]lthough the ALJ did not

27

explicitly refer to plaintiff's 'credibility' in his analysis, there is no question from the record that he assessed plaintiff's uncorroborated testimony on [the issue of telephone calls made to the SSA's '800' number] and found it to be not credible in light of its vagueness and the other evidence in the record.").

While the Appeals Council partially reversed the ALJ's decision for failing to apply 20 C.F.R. § 404.510a and POMS GN § 02250.061 to plaintiff's appeal (see Tr. 7-9), and granted plaintiff a waiver of overpayment for the months October 2001 through September 2002 specifically because he relied on misinformation given to him by an SSA representative during a telephone call to the SSA's "800" number, it also failed to address plaintiff's claim that he relied on misinformation from the SSA in the months subsequent to September 2002.  The Appeals Council did not mention the monthly telephone calls at all, and in affirming the ALJ's decision with respect to the months October 2002 through January 2004, further stated:

> The Appeals Council has considered claimant's letter[s] dated February 9, 2007 [and] July 6, 2009 . . . . [but] these letters do not provide any new information and, therefore, do not provide a basis to change the decision.

(Tr. 9).

Thus, the matter should be remanded for the ALJ to consider plaintiff's contention that from October 2002[13] through January 2004 he was repeatedly advised by the SSA that he was entitled to the benefits he was receiving.  Although the ALJ is not obligated to credit plaintiff's contention, it is incumbent on him, at the very least, to address the contention and to explain why it either is or is not persuasive.  If plaintiff's claims of being misinformed are credited, then he will be without fault and maybe entitled to a waiver of overpayment for those months in which he relied on incorrect information from the SSA.

On remand, then, the ALJ should address both the credibility of plaintiff's contention and, if the ALJ credits plaintiff, the legal consequences of the assurances that plaintiff received from the SSA.  See Valente v. Sec'y of Health & Human Servs., supra, 733 F.2d at 1045 (requiring that an explicit credibility determination be made when a plaintiff's credibility

---

[13]It is not for this court to reconcile the conflict between plaintiff's current contention that he began making the monthly telephone calls to the SSA in June 2002 (see Pl.'s Mem. at 3) and plaintiff's statements in the record that the monthly telephone calls began in November 2002 (see Tr. 105, 213).  See Aponte v. Sec'y Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.") (internal quotations omitted); see also Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1982).

is a "critical factor" in the fault analysis); <u>Ming v. Astrue</u>, <u>supra</u>, 2009 WL 2495947 at *6 ("Accordingly, on remand, the ALJ must also make an explicit determination regarding plaintiff's credibility concerning [the] allegations [about the information that she received during her visits to the SSA's office].");
<u>Lieberman v. Shalala</u>, <u>supra</u>, 878 F. Supp. at 682 ("Where . . . an assessment of credibility is necessary to determine whether a claimant was without fault, the ALJ must make an explicit finding for the record."); <u>cf.</u> <u>Beebe v. Astrue</u>, <u>supra</u>, 2008 WL 5243890 at *7 ("Plaintiff . . . argues that the ALJ failed to make the required credibility findings. However[,] . . . . the ALJ's decision makes abundantly clear that he fully considered plain-tiff's testimony, including the testimony [about the telephone call to the SSA].").

## IV.  <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure be denied and the case be remanded for further proceedings consis-tent with this opinion.

V.  <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair</u>

31

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         October 12, 2011

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Mr. Anthony J. Litvin
P.O. Box 458
New City, New York 10956

Susan D. Baird, Esq.
Assistant United States Attorney
Southern District of New York
3rd Floor
86 Chambers Street
New York, New York 10007